IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHEM FISCHER,<br><br>                 Plaintiff,<br><br>vs.<br><br>FORESTWOOD COMPANY , INC., a Utah corporation et al.,<br><br>                 Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No.  2:02CV210 DAK |

       This matter is before the court on Defendant Forestwood Company, Inc.'s ("Forestwood" or "Defendant") Motion for Summary Judgment, Plaintiff Shem Fischer's ("Mr. Fischer" or "Plaintiff") Motion for Partial Summary Judgment, Plaintiff's Motion to Strike Defendant's Reply Memorandum, and Defendant's Motion to Strike Second Supplemental Affidavit of Shem W. Fischer.[1]  A hearing on the motions was held on February 15, 2006.  At the hearing, Defendant was represented by Rodney R. Parker and Raymond Berry.  Plaintiff Shem Fischer was represented by James W. Stewart and Boyd Rogers.  Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and

---

[1] The court declines to strike either Defendant's Reply Memorandum of Mr. Fischer's Second Supplemental Affidavit.

Order.

## I. BACKGROUND

Mr. Fischer claims that he has been the victim of unlawful religious discrimination in violation of 42 U.S.C. § 2000e-2(a)(1) ("Title VII"). Mr. Fischer contends that this violation arises from the way in which his association with Forestwood came to an end in July, 2000. He alleges that he was "forced out" of his position for objecting to the company's decision to end its association with a co-worker, John Musser, because John Musser had left the FLDS Church.[2]

Mr. Fischer has filed a Motion for Partial Summary Judgment seeking a declaration that he is an "employee" for purposes of Title VII. Defendant, on the other hand, seeks a determination that Mr. Fischer was an independent contractor and not an employee and that he is therefore not protected by Title VII. Title VII does not apply to dealings with independent contractors who are not employees. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998). Forestwood also argues that, in any event, Mr. Fischer suffered no adverse action and thus cannot maintain a claim under Title VII. In addition, Forestwood contends that Mr. Fischer has not proferred any admissible evidence to maintain a claim for failure to rehire. Thus, Forestwood argues, Mr. Fischer's claims against Forestwood should be dismissed.

For the purposes of this motion, the court assumes–but does not decide–that Mr. Fischer was an employee. In addition, the court assumes that Mr. Musser was an employee. The court

---

[2] Plaintiff has presented evidence that Forestwood is closely connected to the FLDS Church. Accordingly to Plaintiff, Forestwood has provided cash donations to the FLDS Church in the past. Plaintiff also claims that, in 2000, Forestwood had only one employee–of approximately seventy–who was not a member of the FLDS Church. During a t least one of Forestwood's shareholder meetings, it was "suggested that the company ought to . . . consult with [Rulon Jeffs, the FLDS Church prophet] concerning use of profits."

finds, however, that Mr. Fischer has not satisfied his burden under Title VII to demonstrate that he suffered an adverse employment action; rather, he resigned.  No reasonable jury could conclude that Mr. Fischer was terminated or that he was constructively discharged.  In addition, because the evidence demonstrates that  Mr. Fischer resigned, he cannot establish the elements of a retaliatory discharge.  Finally, there is no admissible evidence that Mr. Fischer ever reapplied for his old position or that the position was vacant.  He also has not demonstrated that other positions were available.[3]

## II.  STATEMENT OF RELEVANT FACTS

Forestwood Company, Inc. is a Utah corporation with its principal place of business in Hildale, Washington County, Utah.  Forestwood is a family owned company in the business of manufacturing and installing wooden cabinetry.  Prior to the mid-1990's, Mr. Fischer was employed by Forestwood; first in the shop, and later as an installer of cabinets. In the mid-1990's he took a position as a cabinet salesman.

As a cabinet salesman for Forestwood, Mr. Fischer worked with John Musser, who, from 1991 until 2000, prepared "cut lists" for Forestwood using specialized cabinet manufacturing software.  A "cut list" is a detailed drawing and schedule of all the individual pieces which need to be produced by the shop in order to manufacture and assemble a particular cabinet project. During 1999, John Musser and his wife made the personal decision to withdraw from the FLDS Church.  As a result, they moved from Hildale, Utah to Hurricane Utah.  In the months preceding July 2000, John Musser, as an independent contractor,

---

[3]  Plaintiff has conceded that there is no private cause of action for "blacklisting," and thus that claim is dismissed.

continued to supply "cut lists" for Forestwood. Musser produced cut lists for Mr. Fischer's projects, as well as for other Forestwood salesmen.

Beginning in 1999, Mr. Fischer began to view himself as an apostate from the FLDS Church, primarily because he disapproved of church disciplinary action taken against his father, Erwin Fischer. He began to skip various church meetings and work projects. He says he began to experience "heckling" from co-workers at Forestwood, in the form of inquiries about why he had missed meetings or work projects. He claims he would also find anonymous notes left on his car, or in his message box at work, accusing him of being unfaithful to the FLDS Church and its teachings. There is, however, no evidence that Forestwood management was responsible for or had any control over these alleged incidents. Although Mr. Fischer testified that he complained to management about these incidents, there is no evidence as to who was leaving such notes.[4]

Mr. Fischer was not actually excluded from FLDS Church services until April or May of 2000. On July 16, 2000, Warren Jeffs, then a counselor to the President of the FLDS Church, delivered a speech in church in which he noted that apostates from the church were supported to some degree by their business relationships with FLDS members, and were using the income they received in those relationships to fight the church. He urged members to "[b]e kind to everyone, but leave apostates alone," and called upon the membership to "stop helping our enemies fight against us."

---

[4] In any event, even assuming the truth of Plaintiff's claims, such evidence is not sufficient to support a claim for hostile work environment–which has not been alleged in this case–or for a constructive discharge.

On July 25, 2000, during a meeting with Marvin Fischer (the manager of Forestwood) and David Fischer, Plaintiff learned that Marvin Fischer planned to discontinue using the services of John Musser. Plaintiff, believing that the basis for the decision was that John Musser was apostate from the FLDS Church, objected to the decision as constituting religious discrimination. Although there is a significant divergence in perception about what transpired during the following conversation, the exact words exchanged between Plaintiff and Marvin Fischer are undisputed. Plaintiff told Marvin Fischer that if the company released John Musser, *"it will be over the top of me."* Marvin Fischer replied, "[o]kay, if that's the way it's got to be." According to Plaintiff, Marvin Fischer made the statement that "he says, you know, we need to release John Musser, and I says if you release John Musser it will be over the top of me. And Marvin paused for about five, maybe ten seconds and just kind of looked at me and he says, okay, if that's the way it's got to be. Then he paused for about three seconds. I was shocked that I'd just been fired for opposing the release of a fellow worker, someone that did a lot of work for me, over religious beliefs. And in my mind I just clearly had been fired. He said, okay, if that's the way it's got to be. Then after he said if that's the way it's got to be, then he said I wish you'd reconsider."

Plaintiff declined to reconsider, but asked Marvin Fischer for two weeks for Mr. Musser and eight weeks for himself to wrap up projects they were working on, and both requests were granted.[5]

---

[5] Although Defendant has presented evidence that Plaintiff later told Mr. Musser that he had resigned and he told Mr. Richter that he planned to quit to join another company, the court acknowledges that Mr. Fischer disputes those conversations and has considered only the conversation that transpired on July 25, 2000.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In reviewing the factual record, the court construes all facts and make reasonable inferences in the light most favorable to the non-moving party.  *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998).

Where the moving party bears the burden of proof on an issue, that party cannot prevail on summary judgment "unless the evidence that he provides on that issue is conclusive." *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998).  *See also Equal Employment Opportunity Comm'n v. Union Independiente De La Autoridad De Acueductor Y Alcantarillados De Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (same); *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986) (explaining that if a summary judgment movant has the burden of proof, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (citation and emphasis omitted); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.").

## IV.  DISCUSSION

Similarly, Plaintiff has not set forth evidence that would support a finding of constructive

discharge.  Plaintiff's Second Claim for Relief is for retaliatory discharge.  It is based on the allegation that he was terminated because he "voiced his good faith objection to the termination of a fellow employee because of that employee's lack of religious belief in the FLDS Church."  Again, no reasonably jury could conclude that Plaintiff was discharged.

Plaintiff's Third Claim for Relief is for denial of reemployment, based on the provision of Title VII making it unlawful for an employer to refuse to hire an applicant because of the applicant's religion.   Mr. Fischer has failed to satisfy his burden of demonstrating that he applied for reemployment or that there was even a vacancy.[6]

**A.  PLAINTIFF'S ACTIONS CONSTITUTE A VOLUNTARY RESIGNATION**

Shem Fischer's First and Second Claims for Relief  fail because his resignation does not constitute an adverse employment action under Title VII.  Although Plaintiff  might have perceived in his own mind that he had been fired for opposing the alleged illegal termination of his colleague, no jury could reasonably interpret the above discussion as anything other than a resignation by Plaintiff.  *See Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1038 (10th Cir. 1993).  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "An adverse employment action must be materially adverse to the employee's job status.  The adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment with significantly different

---

[6] Plaintiff voluntarily dismissed his blacklisting claim at the hearing on these motions, conceding that there was no private cause of action.

responsibilities, or a decision causing a significant change in benefits." *Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (internal quotations omitted). An employee who resigns cannot claim to have been subjected to an adverse employment action unless the employee's free will is overridden so that the facts amount to constructive discharge. "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Jeffries v. Kansas Dep't of Soc. and Rehab. Servs.*, 147 F.3d 1220, 1233 (10th Cir. 1998).

A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign. Working conditions must be so severe that the plaintiff simply had no choice but to quit. In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged. "The question is not whether working conditions at the facility were difficult or unpleasant." Rather, a plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship. We have previously held that even requiring an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is, for some reason, involuntary.

A court must judge the voluntariness of an employee's resignation under an objective standard, looking to whether his or her working conditions were so intolerable that a reasonable employee would have had no other choice but to quit. *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1135-36 (10th Cir. 2004). To determine whether a jury question exists as to the voluntariness of Plaintiff's resignation, the court considers the totality of the circumstances

under an objective standard. Among the factors the court considers in determining the voluntariness of an employee's resignation are "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [s]he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether [s]he was permitted to select the effective date of resignation."

By comparison, "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice." Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign. A plaintiff's subjective views of the situation are irrelevant. Essentially, a plaintiff must show that she had "'no other choice but to quit.'" *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (citations omitted).

There is little doubt in the present case that Plaintiff resigned. Although he used words such as "fired" and "expelled" to characterize–after the fact–what had happened, his deposition testimony plainly describes a conversation in which the actual words used demand the conclusion that a resignation, not a firing, occurred: Marvin made the statement that—he says, you know, we need to release John Musser, and I says if you release John Musser it will be over the top of me. And Marvin paused for about five, maybe ten seconds and just kind of looked at me and he says, okay, if that's the way it's got to be. Then he paused for about three seconds. I was shocked that I'd just been fired for opposing the release of a fellow worker, someone that did a lot of work for me, over religious beliefs. And in my mind I just clearly had been fired. He

said, okay, if that's the way it's got to be. (Shem Fischer depo. p. 145.)

In this case, there is no evidence whatsoever to show that Fischer's decision to resign was involuntary. The evidence in the present case simply does not come close to meeting the constructive discharge standard.  There is nothing in it that suggests that working conditions were "intolerable."  Indeed, the facts by their very nature logically preclude such a conclusion. Fischer claims that specific action which led to the retaliation and subsequent constructive discharge was his protest over the termination of John Musser.  By Plaintiff's own testimony, however, that protest was expressed in the form of a threat or ultimatum to resign in defense of Mr. Musser.

No reasonable jury could find that Plaintiff was terminated or that he was constructively discharged.  Similarly, Plaintiff's retaliatory discharge claim fails for the same reason.

**B.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIM FOR FAILURE TO REHIRE.**

Plaintiff's remaining claim for denial of reemployment/failure to rehire is not supported by  admissible evidence.   The only evidence offered to support this claim is a taped telephone conversation between Plaintiff and his father, who is now deceased.  There was no opportunity for cross-examination, and the tape is, in certain places, not audible.   The court finds that the evidence of what Plaintiff's father said is inadmissible hearsay.

Moreover, even if Plaintiff's testimony and the tape recording were admissible evidence, the conversation upon which the claim is based is a conversation between a father and his son. While Plaintiff's father (who was the President of Forestwood) apparently expressed his concern for the salvation of his son, no reasonable jury could find that the conversation represents a business decision not to "rehire" an "employee" based upon religious reasons.

Finally, even if the evidence was admissible and could reasonably be construed as a conversation between an employer and an employee–rather than as between a father and a son–Plaintiff has not presented evidence that (1) he actually applied for his old position, or (2) that any other position was available.  It is uncontroverted that Plaintiff's previous position had been filled by Mr. Richter.

 "A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts." *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177 (10th Cir. 2000). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Thus, Fischer has not established the key factual elements of his reemployment claim.

## V.  CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [docket #59] is GRANTED.  Plaintiff's Motion for Partial Summary Judgment [docket #62] is MOOT.  Plaintiff's Motion to Strike Reply Memorandum [docket #75] is DENIED and Defendant's Motion to Strike Affidavit [docket #83] is DENIED.   Plaintiff's claims against Defendant Forestwood are DISMISSED with prejudice.  The trial date in this action is VACATED.  Each party is to bear his/its own costs.

Plaintiff has obtained default certificates as to the Corporation of The President of the Fundamentalist Church of Jesus Christ of Latter-day Saints and Corporation of the Presiding Bishop of the Fundamentalist Church of Jesus Christ of Latter-day Saints (see docket # 34) and

also against Warren S. Jeffs (see docket #47).  Plaintiff is directed to move the court for default judgment as to these defendants.  In addition, Plaintiff is directed to inform the court as to whether any claim remains as to any other defendant.

DATED this 14th day of April, 2006.

BY THE COURT:

*[signature: Dale A. Kimball]*

DALE A. KIMBALL
United States District Judge